IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **MONTY HUMBLE,** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL NO. 6:20-CV-00402-ADA-JCM |
| | § | |
| **ARCTAS MARIAH ENERGY, LLC,** | § | |
| **JOEL SERFACE, AND** | § | |
| **MATTHEW BISCAN,** | | |
| *Defendants.* | | |

### ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND DENYING DEFENDANT'S MOTION TO DISMISS

Before this Court is Plaintiff Monty Humble's Motion to Remand and Defendant Joel Serface's Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6), as well as other grounds. The Court has considered the Motions, all relevant filings, and the applicable law. For the reasons set forth below, the Court finds that Plaintiff's Motion (ECF No. 11) should be **DENIED WITH PREJUDICE** and that the Defendant's Motion should be **DENIED WITHOUT PREJUDICE** (ECF No. 9).

### I.   BACKGROUND

**A.**  *Factual Background*

The core dispute in the instant matter is the level of involvement of a Texas limited liability company, Arctas Mariah, LLC ("Arctas") in an underlying dispute from Colorado. Plaintiff Monty Humble ("Humble") and Defendant Joel Serface ("Serface"), along with others, formed a series of entities in the renewable energy sector. Pls.' Mot. to Remand, ECF No. 11 at 1. Michael Rucker, who is not a party to this case, was sued for concealing and misappropriating trade secret information from his previous company, juwi [sic] Wind, LLC ("juwi"). *See* Def.'s

1

Mot. to Dismiss, Ex. A, ECF No. 9-1. In litigation, Serface, Humble, and others were added as defendants. *Id.* Judge Ann B. Frick (Ret.), a Colorado state Arbiter, conducted the subsequent mediation, and in early August of 2018, Serface and Humble reached a settlement agreement with juwi. *See* Def.'s Ex. H, ECF No. 9-8. Arctas was neither a party to the Colorado litigation nor the Colorado arbitration. Def.'s Mot. to Dismiss, ECF No. 9 at 2.

Humble and Serface submitted to binding arbitration to determine what payment, if any, is deserved "to cover their legal fees and expenses with respect to the juwi litigation[.]'" Def.'s Mot. to Dismiss, Ex. H, ECF No. 9-8 at 3. After due diligence, Judge Frick determined that "Humble and Serface are entitled to recover their reasonable attorneys' fees that each of them personally and actually have incurred." *Id.* at 10. On June 12, 2019, the arbitrator issued an order on the amount of total monies owed to Serface and Humble, totaling $292,923.96. Pls.' Mot. to Remand, ECF No. 11 at 6. Later, Judge Frick ordered that Humble and Serface were owed $146,461.98 each and thus equal amounts. Def.'s Mot. to Dismiss, Ex. I, ECF 9-9 at 2. Colorado Plaintiff juwi paid the total amount to Matthew Biscan ("Biscan"), the retained counsel of Serface and Humble (who is a named, yet unserved, defendant in this action). *Id.* Biscan deposited the monies into his Colorado Attorney Trust Account ("COLTAF"). *Id.* In August 2019, Biscan dispersed $143,731.94 from the COLTAF amount to pay for costs arising from the juwi litigation. *Id.*

For clarity, the total amount sent to the COLTAF account was $292,923.96, then $143,731.94 was subtracted by Biscan to cover costs of litigation; therefore, $149,192.02 remained in the account. At this point, Biscan informed both Serface and Humble that he would disperse the remaining amount, divided by two, to each of them for a total of $74,596.01. Def.'s Mot. to Dismiss, ECF No. 9 at 5. By this point, serious disagreement existed between the parties.

*See* Def.'s Mot. to Dismiss Ex. K, ECF No. 9-11. Following the relevant rules of professional conduct, Biscan withheld the disputed funds, took no side in the financial dispute, and then filed a complaint in interpleader in Colorado state court requesting that court's instructions on dispersing the funds on February 14, 2020. *See* Def.'s Mot. to Dismiss Ex. L, ECF No. 9-12 at 2.

**B.**   *Procedural background*

On January 1, 2020, Humble brought suit in Texas state court naming Arctas, Serface, and Biscan as defendants. Pls.' State Compl. Ex. 1, ECF No. 1-3 at 6. Humble sought declaratory relief from the court in the amount of fifty per-cent of the remaining funds held in escrow, which is $74,596.01. *Id.* at 9. On May 18, 2020, the case was removed to federal court by Serface, who asserted that Arctas was improperly joined. Def.'s Notice of Remand, ECF No. 1-1 at 1.

To briefly summarize the instant case: Defendant Serface argues that Arctas was improperly joined as a party in the Texas state court in order to defeat diversity jurisdiction and deprive him of federal court; therefore, Serface contends that this Court has subject matter jurisdiction under the improper joinder exception to the complete diversity rule. *See* Def.'s Mot. to Dismiss, ECF No. 9. Plaintiff Humble contends that Arctas was a properly joined party, and the Court must remand this case back to Texas state court. *See* Pls.' Mot. to Remand, ECF No. 11.

## II.   LEGAL STANDARDS

**A.**   *Diversity Jurisdiction*

The basis for diversity jurisdiction is statutory, "[t]he district courts shall have original jurisdiction of all civil actions . . . [between] citizens of different States[.]" 28 U.S.C. § 1332(a)(1). Since interpreting the original Judiciary Act of 1806, courts have interpreted the diversity provision as requiring so-called "complete diversity." *Caterpillar Inc. v. Lewis*, 519

U.S. 61, 68 (1996). If complete diversity is lacking, the Court *never had* jurisdiction over this case; thus, removal of the case from state to federal court was improper, and the case must be remanded back to state court. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Therefore, as subject-matter jurisdiction, diversity jurisdiction must be established at the threshold for this Court to have power over the matter.

**B.**   ***Improper Joinder***

However, the judiciary created an exception to section 1441(b)(2) in cases where a party was improperly joined. *See Smallwood v. Ill. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). Generally, improper joinder is a procedural tactic where a party will join another party specifically to destroy diversity and deprive the federal courts of jurisdiction. *See id.* Thus, if a court finds improper joinder, then that defendant's participation in the lawsuit is ignored when determining subject matter jurisdiction. *See id.*

As the Fifth Circuit has noted, "[w]e have routinely relied on our *Smallwood* opinion as *the* authoritative source of our improper-joinder analysis." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016) (punctuation removed). Under *Smallwood*, there are only two ways to prove improper joinder, either actual fraud in the pleadings (which is not at issue here) or "an inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood*, 385 F.3d at 573. The *only* test which shows there is no cause of action is if "there is no reasonable basis for the district Court to predict that the plaintiff might be able to recover against an in-state defendant . . . we adopt this phrase and reject all others[.]" *Id.*

In summary, if Arctas was <u>properly joined</u>, then this Court must remand whole the case back to state court; however, if Arctas was <u>improperly joined</u>, then the case may proceed before this Court. *See id.* To test for improper joinder, this Court must predict whether or not Humble will be able to gain relief against Arctas in Texas state court. *Id.* However, if "a court determines that a nondiverse party has been improperly joined to defeat diversity, that party *must* be dismissed without prejudice." *Int'l Energy*, 818 F.3d at 209.

### C. *Only the original state complaint is analyzed under this improper joinder analysis*

In an improper joinder analysis, subject matter jurisdiction is determined <u>by the complaint at the time of removal</u>; therefore, only the actual claims in Humble's original Texas state complaint are analyzed for purposes of improper joinder. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).[1] In this case, there is an original Texas state complaint filed in the district court of Milam County, dated January 9, 2020. However, on July 1, 2020, Humble filed a Motion for leave of Court to submit an amended complaint, and the Motion was granted on July 6, 2020. *See* Pls.'s Mot. to Amend Compl., ECF No. 22 at 1. However, under an improper joinder analysis, Humble's amended complaint is not relevant—*only* the original state complaint is analyzed.

As the court in *Cavallini* explained, determining jurisdiction under the claims in the state court complaint at the time of removal is critical because otherwise "the issue would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint to assert a new cause of action against the non-diverse defendant, all at considerable expense and delay to the parties and the state and federal courts involved." *Cavallini*, 44 F.3d at 264. The Federal Rules of Civil Procedure are liberal regarding amending a pleading, so if every

---

[1] *See also Bui v. Chandler Companies, L.L.C.*, No. 6-CV-00071-ADA, 2020 WL 1473908, at *2 (W.D. Tex. Mar. 26, 2020) (Albright, J.) ("Jurisdictional facts are determined at the time of removal, and consequently post-removal events do not affect that properly established jurisdiction.").

amendment reignited an improper joinder analysis, nothing would ever get done. *See* FED. R. CIV. P. 15. Thus, this case's amended complaint will only become operational if improper joinder is found.

In summary, as a sister court noted, "the Fifth Circuit has rejected the argument that 'after a fraudulent joinder removal, a plaintiff may amend the complaint in order to state a claim against the non-diverse defendant, and thus divest the Court of jurisdiction.'" *DTND Sierra Inv., LLC v. Bank of New York Mellon Trust Co*, No. 12-CV-1014, 2013 WL 432923, at *3 (W.D. Tex. Feb. 4, 2013)

**D.**     ***Federal—not state—pleading standards apply to the state complaint under state law***

Confusion arises about the pleading standards required when predicting a reasonable basis for success in *state* court—the more liberal Texas fair-notice pleading or the federal standard? As the Fifth Circuit noted, its panels and several district courts have fumbled this issue. *Int'l Energy*, 818 F.3d at 201. However, it is clear that *federal* pleading standards apply when assessing the likelihood of the plaintiff's success in the *state* action because "a federal court must look into the original state court pleading and read it through Federal, not state lenses . . . [when] comparing the state substantive law with the [federal] reading of the complaint." *Id.* at 203 (punctuation removed).

"At bottom, the improper-joinder analysis in the context of removal and remand is solely about determining the *federal* court's jurisdiction . . . . When determining the scope of its own jurisdiction, a federal court does so without reference to state law, much less state law governing pleadings." *Id.* at 202. However, the Court is in fact required to refer to state law but only to the extent that "state substantive law determines the nature of rights and liabilities asserted[.]" *Id.* (citing *Paxton v. Weaver*, 553 F.2d 936 (5th Cir. 1977) (quotations removed). Despite some

seemingly contradictory language, the Fifth Circuit's intentions in *Int'l Energy* are clear. The court first explained in great detail that federal pleading standards are used in improper joinder analysis. Directly after that, in the "Applying That Standard" section, the Court goes on to describe the causes of action under Texas law. *Id.* at 208. Therefore, this Court shall do the same.

**E.    *This Court, in its discretion, will not pierce the pleadings and will conduct a Rule 12(b)(6)-type analysis***

Confusion again arises around whether the district court is permitted to pierce the pleadings and conduct a summary inquiry, or, if the Court must stick strictly to the pleadings in a Rule 12(b)(6)-type analysis. *See* FED. R. CIV. P. 12(b)(6). Both analysis types are permitted. However, the court must choose only one: "[c]ertainly a court *may* choose to use either one of these two analysis, but it *must* use one and only one of them, not neither or both." *Int'l Energy*, 818 F.3d at 207. In *Smallwood*, the court explained that in rare cases, when the plaintiff has misstated or omitted facts that would determine the propriety of joinder, the Court may—in its discretion—pierce the pleadings and conduct a narrow summary inquiry. *Smallwood*, 385 F.3d at 573. Otherwise, the district court may only perform a Rule 12(b)(6)-type analysis on the state pleadings, "[o]rdinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* In this case, the Court finds no unusual circumstances outside of normal improper joinder facts. Therefore, this Court chooses not to exercise its discretion and instead decides to treat this matter as a typical improper joinder.

**F.    *Rule 12(b)(6) analysis standards***

In deciding a Rule 12(b)(6) Motion to Dismiss for failure to state a claim, the Court accepts all well-pleaded facts as accurate and views the facts in the light most favorable to the nonmovant. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a court need not blindly accept every allegation of fact; properly pleaded allegations of fact

amount to more than just conclusory allegations or legal conclusions masquerading as a factual conclusion. *Taylor v. Brooks A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 56 U.S. 652, 678 (2009). To survive the Motion to Dismiss stage a nonmovant must plead enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570. Based upon the assumption that all the allegations in the complaint are true, the factual allegations must be enough to raise a right to relief above the speculative level. *Id.* at 555. When the nonmovant pleads factual content that allows the Court to reasonably infer that the movant is liable for the alleged misconduct, then the claim is plausible on its face. *Iqbal*, 556 U.S. at 678. The plausibility standard requires more than a sheer possibility that a defendant acted unlawfully. *Id.*

The pleading standard announced in Rule 8(a)(2) does not require detailed factual allegations but demands a higher level of specificity than an unadorned "the-defendant-unlawfully-harmed-me accusation." FED. R. CIV. P. 8(a)(2); *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Nor does a complaint comply with the standard if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. Evaluating the plausibility of a claim is a context-specific process that requires a court to draw on its experience and common sense. *Iqbal*, 556 U.S. at 663–64.

Rule 8 governs the construction of a complaint. *See* FED. R. CIV. P. 8. Under Rule 8, the complaint has three substantive parts. *Id.* at (a)(1)-(3) (A short and plain statement of the grounds for the Court's jurisdiction, a short and plain statement of the claim, and the demand for relief.). Important to this matter, "[t]he demand is not part of the substantive claim; thus, selection of an improper form of relief will not subject the complaint to dismissal for failure to state a claim or

cause, provided that the substantive allegations show that some other form of relief would be appropriate." Friedenthal, Kane, & Miller, Civil Procedure, 291 4th ed. 2007 (citing 5 C. Wright & A. Miller, Civil 3d § 1255)  (emphasis added). The logical corollary of a deficiency in the prayer <u>not</u> dooming the whole complaint, is that a well-plead prayer <u>will not save</u> a complaint with insufficient factual claims. Essentially, the prayer is disconnected from the facts, and they are subject to different levels of judicial review.

For the reasons above, Humble's requests in his prayer do not state a valid claim against Arctas. Similarly, merely naming a Defendant as a party, then praying for generic relief against "the Defendants" does not state a valid claim against Arctas. Thus, the <u>sole</u> relevant portion of the state complaint requesting declaratory relief states: "[Arctas] also claims that Plaintiff [Humble] and Defendant Serface are indebted to it, and that it is entitled to receive some or all of the funds." Pls.' State Compl. Ex. 1, ECF No. 1-3 at 9. Therefore, that allegation alone, construed in the light most favorable to Humble, must be sufficient to raise the prospect of a right to relief above the speculative level to "plausibility." *See Twombly*, 550 U.S. at 555.

### G. *State substantive laws in this matter*

Under Texas law, arbitration agreements are interpreted under traditional contract principles. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Furthermore, the Texas judiciary has repeatedly expressed a strong preference for arbitration. *Id.* In the past, the Texas Supreme Court has reversed subordinate courts that exceeded their authority by reviewing an arbitration award, explaining that subjecting arbitration awards to judicial review "adds expenses and delays, thereby diminishing the benefits of arbitration . . . we have long held that an award of arbitrations . . . [have] the same effect as the judgment of a court of last resort. All reasonable presumptions are indulged in favor of the award, and none against it." *CVN Grp., Inc.*

*v. Delado*, 95 S.W.3d. 234, 238 (Tex. 2002). Furthermore, the court in *Delgado* explained that arbitration awards can be set aside only in extraordinary cases when the award violates foundational public policies. *Id.* at 239.

The Texas Arbitration Act ("TAA") is based on the Uniform Arbitration Act. *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 90 (Tex. 2011); Tex. Civ. Prac. & Rem. Code §§ 171.001-171.098. The TAA lists specific grounds for vacating, modifying, or correcting an arbitration; if those grounds are not met, then "the court on application of a party shall confirm the award." *Id.*; Tex. Civ. Prac. & Rem. Code § 171.087. The grounds for a court to modify an arbitration include evident misevaluation of numbers, an evident mistake in a description, instances where an arbitrator made an award concerning matters not submitted to them, or the form of the award inconvenient to the parties but where a modification would be immaterial to the merits. Tex. Civ. Prac. & Rem. Code § 171.091. Notably, a party to the arbitration must make an application to modify or correct an award within 90 days of delivery to the applicant. *Id.*

Like Texas, Colorado also based its substantive state law after the Uniform Arbitration Act and therefore has a narrow role for judicial review of arbitration awards; additionally, Colorado also treats arbitration awards as if they are final judgments. *Judd Constr. Co. v. Evans*, 642 P.2d 922, 924 (Colo. 1982) ("Further, under both the [Colorado Uniform Arbitration] Act and the common law, an arbitration award is tantamount to a judgment and is entitled to be given such status by a court sitting in review."). The Colorado Uniform Arbitration Act's provisions for judicial modification of an arbitration award are virtually the same to the TAA; however, modifications must be made within 91 days of receipt of the award as opposed to 90 days under the TAA. Colo. Rev. Stat. Ann. § 13-22-224 (West 2004); Tex. Civ. Prac. & Rem. Code § 171.091.

The Full Faith and Credit Clause of the U.S. Constitution has always required state courts to enforce judgments of sister states. *Hampton v. McConell*, 3 Wheat. 234, 235 (1818) (Marshall, C.J.) ("[T]he judgment of a state court should have the same credit, validity, and effect in every other court in the United States, which it had in the State where it was pronounced[.]"). Of course, there are exceptions to the Full Faith and Credit Clause,[2] however, this Court finds that none apply here. If a party argues a defense against a foreign judgment in Texas state court, it is by definition a collateral attack on the judgment; however, in a collateral attack on a sister state's judgment, one may not raise a defense that touches the merits of the controversy. *Charles Brown, L.L.P. v. Lanier Worldwide*, 124 S.W.3d 883, 903 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

In *Charles Brown*, the Defendant presented a prima facie case by submitting an out of state final judgment to a Texas state court. *Id.* at 48. The plaintiff, by asserting a defense against enforcement, collaterally attacked the judgment. *Id.* Thus, the plaintiff had to overcome the prima facie presumption with a showing that the judgment was in fact void. *Id.*

### III.     ANALYSIS

In this case, Humble has presented a final arbitration award to a Texas state court claiming that Arctas wishes to defend against enforcement. Pls.' State Compl. Ex. 1, ECF No. 1-3 at 9. Thus, under the *Charles Brown* mechanics, Arctas could only prevail if it shows the judgment was void. *Charles Brown*, 124 S.W.3d at 903. Otherwise, the Texas court will have no choice but to confirm the award. *See* Tex. Civ. Prac. & Rem. Code § 171.087 (Stating that if the award is not vacated, modified, or corrected then "the court on application of a party shall confirm the award.").

---

[2] Recognized exceptions to full faith and credit requirements are (1) the judgment is interlocutory; (2) the judgment is subject to modification under the law of the rendering state; (3) the rendering state lacked jurisdiction; (4) the judgment was procured by extrinsic fraud; and (5) limitations had expired. *See Charles Brown* 124 S.W.3d at 903.

11

The instant case presents an unusual legal test for improper joinder. Humble seeks only declaratory relief against Arctas in Texas court, arising from a Colorado arbitration agreement, all under a modified Rule 12(b)(6) federal analysis. Humble's presumed-to-be-true complaint states that Arctas is claiming it is owed money directly from the arbitration award, essentially as an offset for debt related to the underlying litigation. *See* Pls.' State Compl. Ex. 1, ECF No. 1-3 at 8.

However, Humble faces a fatal problem, even if Arctas could be imputed[3] as a party to the arbitration under any of the statutory frameworks because the 90-day Texas, the 91-day Colorado, and the three-month Federal Arbitration Act window to modify an award have expired. *See* Tex. Civ. Prac. & Rem. Code § 171.091; Colo. Rev. Stat. Ann. § 13-22-224 (West 2004); 9 U.S.C. § 12. This Court does not rule as to which framework is necessary to show a well pleaded claim in the improper joinder analysis because there is no path for Arctas to modify the award under either the TAA, the CUAA, or the FAA.

The statutes are not ambiguous. The legislatures and Congress used clear and mandatory language such as "shall" and "must," such that Texas courts have consistently enforced the time bars. *See, e.g., Garza v. Phelps Dodge Refining Corp.*, 262 S.W.3d 514, 520 (Tex. App.—El Paso 2008, no pet.) ("A party must apply for judicial modification of an arbitration award not later than the 90th day after delivery of the award."); *New Med. Horizons II Ltd. v. Jacobson*, 317 S.W.3d. 421, 429 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ([The Legislature] just as

---

[3] Six theories have been recognized for incorporating non-signatories into an arbitration agreement: incorporation by reference, assumption, agency, veil-piercing/alter ego, estoppel, and third-party beneficiary. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003) (cert denied). Of the six, the most applicable is equitable estoppel which allows a non-signatory to compel arbitration in cases where arbitration's allegations give rise to "substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Grigson v. Creative Artists Agency*, 210 F.3d 524, 527 (5th Cir. 2000). This ruling makes no finding whether Arctas had a plausible claim to incorporate itself into the agreement as a non-signatory because the deadline to alter the agreement has tolled.

clearly requires that any such challenge [to an arbitration award] be raised not later than 90 days from the delivery of the award, or the award must be confirmed.").

In this case, the arbitration agreement was entered on June 12, 2019. Def.'s Mot. to Dismiss Ex. 1, ECF No. 9-9 at 2. At the very latest, Arctas was notified of the Texas state case on January 10, 2020. Pls.'s State Compl. Ex. 1, ECF No. 1-3 at 17. Presently, it is well past 400 days since the entry of the award, and over 200 days since Arctas was served with process of the Texas state action which would have given sufficient notice. Therefore, even if Arctas could impute itself into the arbitration at some point in the past, the time of any modification of the award has long since passed under any statutory framework.

Under all three statutory frameworks, if the strict grounds are not met for modifying the award, then the reviewing Court must simply confirm the award. Tex. Civ. Prac. & Rem. Code § 171.087 (Stating that if the award is not vacated, modified, or corrected then "the court on application of a party shall confirm the award."); Colo. Rev. Stat. Ann. § 13-22-222 (West 2004) ("[A party] may make a motion to the court for an order confirming the award at which time the court shall issue a confirming order unless the award is modified"); 9 U.SC. § 9 ("[A]ny party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.") Because Arctas is outside of the 90-day, 91-day, or three-month window to modify an arbitration award, this Court finds that Arctas is prevented from any modification as a matter of law.

Because Arctas cannot ask any court to modify the arbitration award, Arctas has zero chance of recovery against the award itself. Therefore, Humble's request for declaratory relief against Arctas does not state a valid claim. Remedially, the test for improper joinder is <u>only</u> if

"there is no reasonable basis for the district Court to predict that the plaintiff might be able to recover against an in-state defendant[.]" *Smallwood*, 385 F.3d at 573. Because Arctas cannot modify the award, Humble's request for declaratory relief against Arctas is improper. Thus, there is no reasonable basis for this Court to predict that Humble can gain relief against Actas. Therefore, Arctas was improperly joined in this matter.

As such, this Court find that there is complete diversity of parties under the improper joinder exception. Therefore, this Court had proper subject matter jurisdiction from the time of removal. "When, as here, a court determines that a nondiverse party has been improperly joined to defeat diversity, that party *must* be dismissed without prejudice." *Int'l Energy*, 818 F.3d at 209.

## IV.     CONCLUSION

Therefore, because of the reasons state above, the Court finds the Motion for remand lacking legal merit and is **DENIED**. ECF No. 11. This Court finds that Defendant Arctas was improperly joined; therefore, Defendant Arctas is **DISMISSED WITHOUT PREJUDICE.** All other Motions pending before the Court, including Defendant Serface's *Fourm Non Conveniens* and Improper Venue Motions, are **DENIED WITHOUT PREJUDICE**. The Court welcomes all parties to submit new filings in light of this ruling in order to properly address the new procedural posture of this matter.

**SIGNED** this 4th day of August, 2020.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE